## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGE LARDNER,

    Plaintiff,

     v.

DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 08-1398 (CKK)

## MEMORANDUM OPINION
(July 31, 2009)

Plaintiff, George Lardner, filed the above-captioned action against Defendant Office of the Pardon Attorney ("OPA"), a component of the Department of Justice ("DOJ"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of the identities of pardon applicants and commutation applicants whose applications had been denied during former President George W. Bush's term in office. Currently pending before the Court are the parties' cross-motions for summary judgment.[1] After thoroughly reviewing the parties' submissions, including the attachments thereto, applicable case law, statutory authority, and the record of the case as a whole, the Court shall GRANT IN PART and DENY IN PART Plaintiff's [9] Motion for Summary Judgment and shall GRANT IN PART and DENY IN PART

---

[1] Although OPA entitles its motion a "Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment," the Court treats OPA's motion solely as a motion for judgment under Federal Rule of Civil Procedure ("Rule") 56—and not for judgment on the pleadings under Rule 12(c). OPA has, for example, submitted with its motion the Declaration of Helen M. Bollwerk ("First Bollwerk Decl."), which it relies upon throughout its motion. As Rule 12(d) makes clear, "[i]f, on a motion under Rule [] 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Defendant's [10] Cross-Motion for Summary Judgment.  Specifically, the Court DENIES

Plaintiff's motion and GRANTS Defendant's motion with respect to the issues of collateral

estoppel and segregabilty, but GRANTS Plaintiff's motion and DENIES Defendant's motion

with respect to the propriety of withholding the requested information under Exemptions 6 and

7(C).  OPA is therefore required to disclose to Plaintiff the responsive lists of pardon and

commutations applicants whose applications were denied by President Bush during his term in

office.

## I.  BACKGROUND

*A.      OPA and the Clemency Process*

The facts of this case are straightforward.  OPA is the component within DOJ that is

assigned to carry out the function of assisting the President in the exercise of his clemency

powers.  *See* Declaration of Helen M. Bollwerk, Deputy Pardon Attorney (hereinafter "First

Bollwerk Decl."), submitted in support of Defendant's Motion for Summary Judgment, ¶ 3.[2]

OPA receives petitions addressed to the President for all forms of executive clemency (including

pardon, commutation of sentence, remission of fine, and reprieve) for federal criminal offenses

and conducts the appropriate investigations on the merits of those petitions.  *Id.*  OPA then uses

---

[2] As a preliminary matter, Court strictly adheres to the text of Local Civil Rule 7(h)(1)
and "assumes that facts identified by the moving party in its statement of material facts are
admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition
to the motion."  LCvR 7(h)(1).  Accordingly, the Court shall either refer to Plaintiff's Statement
of Material Facts ("Pl.'s Stmt.") or Defendant's Statement of Material Facts ("Def.'s Stmt."),
unless a party disputes a proffered fact *and* cites to contrary evidence in the record.  The Court
shall also cite to evidence in the record (including the declarations submitted by the parties)
where appropriate, to provide information not covered by the parties' statements of material
facts.  The Court finds that there is no genuine dispute over the factual issues that are material to
resolution of this case.

the information collected to prepare reports ("letters of advice") advising the President about the recommended disposition of individual cases. *Id.* ¶ 3. As Ms. Bollwerk explains, the letters of advice "contain[] a frank and candid analysis of the offense, the applicant's rehabilitation and suitability for clemency, and the likely impact of a grant of clemency." *Id.* ¶ 4.

Pursuant to Article II, Section 2 of the Constitution, the President has the exclusive authority to make final decisions in clemency cases. *Id.* ¶ 6. Accordingly, the President is free to disregard OPA's recommendation or to act without any involvement from the OPA whatsoever. *Id.* OPA, however, concedes that "the President has traditionally relied heavily on the [OPA's] advice in clemency cases to inform his decision-making." *Id.* ¶ 6.

Once the President makes his final decision whether to grant or deny a clemency request, OPA is then charged with implementing that decision. *See id.* ¶¶ 15-17. If the President decides to *grant* clemency, OPA is notified of that decision and is then responsible for preparing and executing the appropriate clemency warrant. *Id.* ¶ 15. In addition, OPA is responsible for providing DOJ's Office of Public Affairs with a memorandum advising it of the President's decision to grant clemency as well as the date of the President's favorable action, the name of the clemency recipient, the city and state of his residence, the offense for which clemency was granted, the date and district of conviction, the sentence imposed, and the name as well as city and state of residence of the applicant's attorney, if the applicant was represented. *Id.* ¶ 17. This information is also readily available to the general public for review on DOJ's website. *See* http://www.usdoj.gov/pardon/recipients.htm (last visited July 30, 2009).

If the President decides, however, to *deny* clemency, the Office of the Counsel to the President provides OPA with written notification that the request for clemency has been denied.

*Id.* ¶ 15.   This written notification serves as the official record of the President's action on the clemency requests of those applicants, and is retained by OPA, which places a copy of the notification in the individual applicant's clemency file and also records the information in OPA's automated database.   Second Bollwerk Decl. ¶ 5.   As is particularly relevant to the instant action, OPA admits that it maintains lists of clemency applicants whose applications have been denied. Plaintiff's Statement of Material Facts ("Pl.'s Stmt."), ¶ 17; Defendant's Response ¶ 17.

OPA is also responsible for notifying each applicant in writing of the President's decision to deny the applicant's clemency request.   First Bollwerk Decl. ¶ 15.   Although, in contrast to a grant of clemency, OPA does not typically notify the Office of Public Affairs when the President denies a request for clemency, *id.* ¶ 17, OPA reserves the right to do so in "cases of substantial public interest," Def.'s MSJ, Ex. E (Privacy Act statement).   Moreover, as a matter of general practice, the OPA freely discloses identifying information about unsuccessful clemency applicants to any member of the public upon a request for information about a particular person. *Id.* ¶¶ 19-20.   OPA provides formal notice of its practice of disclosure in the Federal Register as well as in its Privacy Act statement, which is included in and made a part of every clemency application.   *Id.* ¶ 20.   Specifically, the Federal Register notice advices interested parties that OPA will publicly disclose the following information to "[a] member of the public who has requested information concerning a specific, named person:"

> whether a clemency application has been filed, and if so, the date on which it was filed, the type of clemency sought, the offense(s) for which clemency is sought, the date and court of conviction, the sentence imposed, the decision of the President to grant or deny clemency and the date of that decision, the administrative closure of a clemency request and the date of such closure.

67 Fed. Reg. 66417, 66417-18.   Similarly, OPA's Privacy Act statement advises clemency

applicants that OPA will advise a third-party, "[u]pon specific request," "whether a named

person has been granted or denied clemency," First. Bollwerk Decl. ¶ 20, and that the OPA

"may" prepare a "public affairs notice . . . describing . . . a denial of clemency in cases of

substantial public interest," Def.'s MSJ, Ex. E (Privacy Act statement).  As of November 3,

2008, President Bush had granted 157 pardons and six commutations of sentence, and had denied

1,535 pardon requests and 6,290 commutation requests during his administration.  *Id.*

    B.    *Plaintiff's FOIA Request*

By letter dated April 10, 2008, Plaintiff submitted a FOIA request to OPA seeking the

identities of all those denied pardons and, separately, all those denied commutations by President

Bush during his term in office.  Pl.'s Stmt. ¶ 2; Defendant's Statement of Material Facts ("Def.'s

Stmt."), ¶ 1.  OPA declined to produce any of the lists of unsuccessful clemency applicants

retained by OPA or any other potentially responsive documents, citing FOIA Exemptions 6 and

7(C) as the basis for withholding all responsive records.  Pl.'s Stmt. ¶ 3 & Ex. B (May 22, 2008

Letter from OPA to Plaintiff); Defendant's Response Statement ("Def.'s Resp."), ¶ 3.  Plaintiff

appealed the denial of his FOIA request by letter dated June 9, 2008.  Pl.'s Stmt. ¶ 4 & Ex. C

(June 9, 2008 Letter from Plaintiff to OPA); Def.'s Resp. ¶ 4.  On August, 12, 2008, having

received no response to his appeal, Plaintiff filed the Complaint in the above-captioned matter.

*See* Pl.'s Stmt. ¶ 5; Def.'s Resp. ¶ 5; Compl., Docket No. [1].[3]  Thereafter, by letter dated

---

[3] In filing the instant action, Plaintiff also challenged OPA's response to a second FOIA request he had submitted to OPA on February 11, 2008, in which he sought copies of OPA's annual and quarterly status reports.  *See* Compl. ¶¶ 10-13.  As set forth in the parties' Stipulation filed with this Court on October 16, 2008, the parties have mutually resolved all issues related to the February 11, 2008 FOIA request, and Plaintiff has agreed to voluntary dismiss those portions of his Complaint based on his request for copies of OPA's annual and quarterly status reports. *See* Stipulation, Docket No. [8].

September 5, 2008, Plaintiff was advised that the DOJ was closing his appeal file, in light of the filing of the instant lawsuit.  Pl.'s Stmt. ¶ 5 & Ex. D (September 5, 2008 Letter from DOJ to Plaintiff); Def.'s Resp. ¶ 5.

As stipulated by the parties, the sole issue now before the Court is whether OPA may properly withhold the names of pardon and commutation applicants (collectively, "clemency applicants") whose applications were denied by President Bush.[4]  The parties have filed their respective cross-motions for summary judgment.  *See* Pl.'s Motion for Summary Judgment, Docket No. [9], ("Pl.'s MSJ"); Def.'s Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, Docket No. [10], ("Def.'s MJS").  Each party has also filed their respective oppositions, *see* Plaintiff's Opposition to Def.'s MSJ, Docket No. [13], ("Pl.'s Opp'n"); Defendant's Opposition to Plaintiff's MSJ, Docket No. [14], ("Def.'s Opp'n"), and

---

[4] On November 13, 2008, the parties advised the Court that they had resolved disputes relating to a third FOIA request, which was submitted on November 13, 2008 by Plaintiff to the OPA seeking, *inter alia*, specific information as to each pardon applicant and commutation applicant whose application was denied by President Bush.  *See* Stipulation, Docket No. [11], ¶ 1.  Specifically, Plaintiff sought the following information in the November 11, 2008 FOIA request as to each pardon and commutation applicant whose application had been denied by President Bush: (a) the nature of the applicant's offense; (b) the sentence imposed upon him; (c) the date of sentencing; (d) the date of the President's decision denying clemency; (e) the date (or at least the year) when the application was filed; and (f) whether the applicant sought pardon or commutation.  *See id.*  The parties have since advised the Court that OPA has agreed to disclose the requested information—but without the *name* that corresponds to each applicant's data.  *Id.* ¶ 3.  In return for disclosure of this information, Plaintiff agreed to withdraw all other aspects of the November 13, 2008 FOIA request and "not to request any fees or costs in connection with briefing the issue of segregability raised in the filings in this action."  *Id.* ¶¶ 4-5.  The parties, however, disagree as to whether the information requested in the November 13, 2008 FOIA request is also properly encompassed by Plaintiff's April 10, 2008 FOIA request at issue in this lawsuit.  *Id.* ¶ 2.  Nonetheless, as Plaintiff's concerns with respect to that information have now been resolved by stipulation, the parties agree that the sole "issue remaining in this action and that must be resolved by the Court is whether the defendant must disclose the names of pardon applicants and commutation applicants whose applications were denied by President George W. Bush."  *Id.* ¶ 7.

replies, *see* Plaintiff's Reply, Docket No. [15], ("Pl.'s Reply"); Defendant's Reply, Docket No. [16], ("Def.'s Reply").  Briefing is therefore complete, and the parties' cross-motions are now ripe for the Court's review and resolution.

## II.  LEGAL STANDARD

In reviewing a motion for summary judgment under FOIA, the Court must conduct a *de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  In the FOIA context, "*de novo* review requires the Court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under [] FOIA.'"  *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).  Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency seeking summary judgment proves that it has fully discharged its FOIA obligations is summary judgment appropriate.  *Moore v. Aspin*, 916 F. Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  In opposing a motion for summary judgment, a party must offer more than conclusory statements.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).  Indeed, a plaintiff pursuing an action under FOIA must establish that the agency has improperly claimed an exemption as a matter of law or that the agency has failed to segregate and disclose all non-

exempt information in the requested documents.  *See Perry-Torres v. Dep't of State*, 404 F.

Supp. 2d 140, 142 (D.D.C. 2005).

Congress enacted FOIA for the purpose of introducing transparency to government

activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress

remained sensitive, however, to the need to achieve balance between this objective and the

vulnerability of "legitimate governmental and private interests [that] could be harmed by release

of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,

975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. DOJ*, 140 F.3d 1077, 1079 (D.C. Cir.

1998).  Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold

requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).  The agency must demonstrate

the validity of any exemption that it asserts.  *See id.*; *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C.

Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify

withholding requested documents").  In addition, summary judgment may be granted on the basis

of the agency's accompanying affidavits or declarations if they describe "the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld logically

falls within the claimed exemption, and are not controverted by either contrary evidence in the

record nor evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738

(D.C. Cir. 1981).  These affidavits may be submitted by an official who coordinated the search,

and need not be from each individual who participated in the search.  *See SafeCard Servs. v. Sec.

& Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

An agency also has the burden of detailing what proportion of the information in a

document is non-exempt and how that material is dispersed throughout the document.  *Mead*

*Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Any non-exempt

information that is reasonably segregable from the requested records must be disclosed.  *Ogelsby*

*v. U.S. Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).  In addition, district courts are

required to consider segregability issues *sua sponte* even when the parties have not specifically

raised such claims.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028

(D.C. Cir. 1999).

### III.  DISCUSSION

As discussed above, OPA has withheld the requested information pursuant to Exemptions

6 and 7(C).  Plaintiff initially contends that OPA is collaterally estopped from asserting that the

names of unsuccessful clemency applicants may be withheld under Exemption 6.  Plaintiff also

contends that even if the Court were to reach the merits of OPA's withholding under Exemption

6, the balance of the private and public interests implicated by disclosure in this instance

mandates that OPA release the names of the unsuccessful clemency applicants.  In addition,

Plaintiff argues that the documents at issue are not "law enforcement records" for purposes of

FOIA, and therefore OPA is not entitled to withhold the identities of the unsuccessful clemency

applicants pursuant to Exemption 7(C) either.  The Court first addresses the question of collateral

estoppel before then turning to the merits of the parties' arguments regarding the propriety of

OPA's withholdings under Exemptions 6 and 7(C).  Finally, the Court examines the question of

segregability.

> A.    *Collateral Estoppel Does Not Preclude OPA from Litigating the Propriety of*
>       *Withholding the Information Requested Pursuant to Exemption 6*

As explained above, OPA has refused to disclose responsive material listing the names of

clemency applicants whose applications were denied by President Bush based, in part, on FOIA

Exemption 6.  Plaintiff initially argues that OPA is barred by collateral estoppel from

withholding the requested information.  According to Plaintiff, the parties litigated this issue to a

final judgment in an earlier action, *Lardner v. DOJ*, Civ. Act. No. 03-180, 2005 WL 758267

(D.D.C. Mar. 31, 2005) (hereinafter "*Lardner I*").  OPA disagrees, arguing that collateral

estoppel is not appropriate.  For the reasons set forth below, the Court agrees with OPA that

Plaintiff has failed to show that collateral estoppel applies in this instance.

"Collateral estoppel, or issue preclusion, provides that 'once a court has decided an issue

of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a

suit on a different cause of action involving a party to the first case.'"  *Stonehill v. Internal*

*Revenue Serv.*, 534 F. Supp. 2d 1 (D.D.C. 2008) (quoting *Allen v. McCurry*, 449 U.S. 90, 94

(1980)), *aff'd* 558 F.3d 534 (D.C. Cir. 2009).  The doctrine requires three elements: "'(1) the

same issue now being raised must have been contested by the parties and submitted for judicial

determination in the prior case; (2) the issue must have been actually and necessarily determined

by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case must

not work a basic unfairness to the party bound by the first determination.'"  *Martin v. DOJ*, 488

F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245,

254 (D.C. Cir. 1992)).  The party invoking collateral estoppel "bears the burden of establishing

that the conditions for its application have been satisfied."  *In re Subpoena Duces Tecum Issued*

*to Commodity Futures Trading Comm'n*, 439 F.3d 470, 743 (D.C. Cir. 2006).

Plaintiff has failed to show that the first element is satisfied—*i.e.*, that the issue now

being raised is the same issue that was previously contested by the parties and submitted for

determination in the prior case.  Rather, the Court concludes that the issues in the two actions,

10

although admittedly similar, are sufficiently different that application of the doctrine is

inappropriate.  The earlier action involved a previous FOIA request by Plaintiff to OPA seeking

production of two categories of documents: (1) "all 'letters of advice' (the reports from the

Attorney General or his designee to the President advising whether to grant or deny requests for

pardons) generated from 1960 to 1989," and (2) "the complete files of the pardon applications of

twenty-five prominent individuals."  *Lardner I*, 2005 WL 758267, at *1.  The materials at issue

in that action dated from the administration of former President Ronald Reagan or earlier.  *Id.* at

* 18.  OPA provided Plaintiff with thousands of pages of documents, but—as is relevant

here—in the course of providing Plaintiff with copies of the requested 25 pardon applications,

redacted the names of 141 unsuccessful pardon applicants whose names happened to appear in

those pardon records.  *Id.* at *1, 16.  Judge John D. Bates held that "it was improper for the

Department to withhold on personal privacy grounds [*i.e.*, pursuant to FOIA Exemption 6] the

identity of unsuccessful pardon applicants . . . from the disclosed pardon documents in which

they appear."  *Id.* at * 1.[5]

By contrast, the dispute now before the Court stems from a more recent FOIA request by

Plaintiff seeking disclosure of responsive materials listing the identities of all clemency

applicants whose applications were denied during former President Bush's term in office.  The

FOIA request at issue here, and the materials responsive to that request, thus differ materially

from the FOIA request and responsive materials at issue in the prior action.  Unlike in *Lardner I*,

---

[5] As Judge Bates noted, Exemption 6 was the "only exemption claimed in [that] case to
prevent disclosure of the names of unsuccessful applicants."  *Lardner I*, 2005 WL 758267, at *
18.  Exemption 7(C), the other exemption claimed in this case, was therefore not at issue in
*Lardner I*.

in which Plaintiff's request for disclosure of the identities of unsuccessful clemency applicants

was cabined to only those 141 names that happened to appear in a select number of pardon files

specifically requested by Plaintiff and dating from President Reagan's administration or earlier,

Plaintiff's current request seeks disclosure of lists retained by OPA identifying the more than

7,000 applicants who were recently denied clemency by President Bush.

The fact that the FOIA requests in the two actions, as well as the materials responsive to

those requests, differ considerably counsels against application of collateral estoppel. *Cf.*

*Martin*, 488 F.3d at 301 (collateral estoppel applicable in FOIA action where same 1991 Report

was at issue in both actions); *Nat'l Treasury Employees Union v. Internal Revenue Serv.*, 765

F.2d 1174, 1177 (D.C. Cir. 1985) (collateral estoppel applied where "the FOIA requests in the

two actions are identical except for the year involved"); *Stonehill*, 534 F. Supp. 2d at 6-7

(collateral estoppel applicable in FOIA action where the withheld documents at issue in the

previous litigation were the "same documents that are in issue in [the instant] proceeding"). In

particular, although both actions broadly confront the propriety of withholding the identities of

unsuccessful clemency applicants, the circumstances in which the withholdings were made vary

substantially between the two matters. Moreover, Plaintiff seeks to apply the doctrine to

litigation of a legal issue, not a factual one, and in such circumstances, the D.C. Circuit has

counseled that there is "more room for a second look when the issue is one of law than when a

fact question is at stake." *Nat'l Treasury*, 765 F.2d at 1177. In light of this observation and the

differences between the two actions, the Court is persuaded that it is appropriate to permit OPA

the opportunity to demonstrate why the legal issue should be resolved differently in this case,

given the differences between the actions, rather than precluding OPA from litigating the merits

of the new situation.  Accordingly, the Court shall DENY Plaintiff's Motion for Summary

Judgment and GRANT Defendant's Cross-Motion for Summary Judgment, with respect to the

question of collateral estoppel.

> B.      *OPA May Not Withhold the Names of Unsuccessful Clemency Applicants*
>         *Pursuant to FOIA Exemptions 6 and 7(C)*

The Court turns next to the merits of OPA's withholdings.  As explained above, the

parties' remaining disputes on summary judgment focus on OPA's decision to withhold

responsive materials listing the names of clemency applicants that have been denied clemency by

President Bush pursuant to both Exemption 6 and Exemption 7(C).  The Court shall first

examine the propriety of withholding the requested information under Exemption 6 before than

examining the merits of withholding such information under Exemption 7(C).

> 1.      Exemption 6

FOIA Exemption 6 permits an agency to withhold information contained within

"personnel and medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  *See also Nat'l Archives &*

*Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *DOJ v. Reporters Comm. for Freedom of*

*the Press*, 489 U.S. 749, 773-74 (1989).  The term "similar files" is broadly interpreted, such that

Exemption 6 protects from disclosure all information that "applies to a particular individual" in

the absence of a public interest in disclosure.  *State Dep't v. Washington Post Co.*, 456 U.S. 595,

602 (1982) ("In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class

of files containing only a discrete kind of personal information.  Rather, the exemption was

intended to cover detailed Government records on an individual which can be identified as

applying to that individual.") (internal quotation and citation omitted).  Accordingly, it is not the

nature of the files in which the information is contained, but rather the balance of public and

private interests that determines the exemption's scope. *Washington Post*, 456 U.S. at 599-600.

Exemption 6 "tilt[s] the balance (of disclosure interests against privacy interests) in favor

of disclosure," and creates a "heavy burden" for an agency invoking Exemption 6. *Morley v.*

*Cent. Intelligence Agency*, 508 F.3d 1108, 1128 (D.C. Cir. 2007). Thus, in considering whether

Exemption 6 applies, the Court must "first determine whether disclosure of the [information at

issue] 'would compromise a substantial, as opposed to *de minimis*, privacy interest.'" *Multi Ag*

*Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (quoting *Nat'l Ass'n*

*of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). For this purpose, "[a]

substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1230-

31. In addition, for purposes of balancing, it is significant that "[t]he public's interest in

disclosure of personnel files derives from the purpose of the [FOIA] – the preservation of 'the

citizens' right to be informed about what their government is up to.'" *Beck*, 997 F.2d at 1492-93

(quoting *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted)). While FOIA's

purpose "is furthered by disclosure of official information that 'sheds light on an agency's

performance of its statutory duties,'" "[i]nformation that "reveals little or nothing about an

agency's own conduct' does not further the statutory purpose; thus the public has no cognizable

interest in the release of such information." *Id.* at 1493 (quoting *Reporters Comm.*, 489 U.S. at

773).

Neither party disputes that the information requested by Plaintiff constitutes a "personnel

and medical file[] [or] similar file[]," such that it meets the threshold requirement for protection

under Exemption 6. Accordingly, the Court turns directly to consideration of the privacy and

public interests implicated by disclosure.

      i.  An unsuccessful clemency applicant's privacy interest in disclosure of the requested information is of a limited and minimal nature.

  As stated above, the Court must "first determine whether disclosure of the [information at issue] 'would compromise a substantial, as opposed to *de minimis*, privacy interest.'" *Multi Ag Media LLC*, 515 F.3d at 1230 (quoting *Nat'l Ass'n of Retired Fed. Employees*, 879 F.2d at 874). OPA contends that disclosure of an individual's name as part of a list of individuals whose applications for clemency have been denied would effect a "double stigma" on the unsuccessful clemency applicant, publicly revealing "both the fact of an individual's federal criminal conviction" and "the fact that the individual applied for clemency *and was deemed unworthy of clemency*." Def.'s MSJ at 7-8 (emphasis in original). Plaintiff counters that denial of a clemency application is not so rare as to stigmatize an unsuccessful applicant and that, regardless, the applicants have no reasonable expectation that the existence of their application for clemency and the eventual decision by the President on that application will not be publicly disclosed. Pl.'s Opp'n at 7-11. The Court ultimately finds an unsuccessful clemency applicant's privacy interest—although not zero, as Plaintiff contends—is nonetheless of a minimal and limited nature given the circumstances of disclosure in this case.

  First, the Court does not agree that disclosure effects a "double stigma," as OPA urges. Plaintiff's FOIA request seeks disclosure only of the fact that an individual has applied for and been denied clemency. That is, Plaintiff does *not* seek disclosure of any substantive, personal information located in the actual clemency files. Although disclosure of the fact that an individual has applied for clemency inherently reveals that the individual has previously been convicted of a federal crime, the Court emphasizes that Plaintiff does not seek the details of the

individual applicant's criminal history or federal conviction.  Moreover, as is clear from the

statistics provided by OPA, only a very small minority of clemency applications are actually

granted; by far, the majority are denied.  *See* First Bollwerk Decl. ¶ 15 (as of November 3, 2008,

President Bush had granted 157 pardons and six commutations of sentence, but denied 1,535

pardon request and 6,290 commutation requests).  Rejection is therefore not "'so rare an

occurrence as to stigmatize the [rejected] applicant.'"  *Lardner I*, 2005 WL 758267, at * 17

(quoting *Kurzon v. Dep't of Health &  Human Servs.*, 649 F.2d 65, 69 (1st Cir. 1981)).[6]  Thus,

although public disclosure of the President's decision to grant clemency arguably has a positive

impact on an individual applicant, the Court is not persuaded that the converse is true—*i.e.*, that

public disclosure of the President's decision to deny clemency will "reflect poorly upon [an

individual applicant's] current level of rehabilitation and good character."  First Bollwerk Decl. ¶

27.

Second, clemency applicants have no reasonable expectation that OPA will not publicly

disclose either the existence of their clemency application or the President's eventual decision

whether to grant or deny clemency.  OPA acknowledges, as it must, that applicants are advised

that OPA will reveal such information upon request.  As explained above, it has been OPA's

long-standing practice to freely disclose to any member of the public both that an individual has

applied for clemency and that the President has denied the request for clemency whenever it

receives an inquiry about an individual by name.  *See supra* at pp. 4-5.  OPA's Privacy

---

[6] Although the Court held above that Judge Bates' decision in *Lardner I* does not bar
OPA from litigating the legal question at hand, that finding does not, of course, mean that the
Court need ignore Judge Bates' persuasive and well-reasoned decision to the extent it is directly
relevant to the issues now before the Court.

Statement, which is part of the clemency application form provided to and filled out by all clemency applicants, specifically informs potential applicants that "[u]pon specific request, we advise anyone who asks whether a named person has been granted or denied clemency." *Id.* Indeed, pursuant to the OPA's current disclosure policy, OPA will, upon request, publicly disclose not only whether a clemency application has been filed and the decision of the President to grant or deny clemency and the date of that decision, but also the date the clemency application was filed; the type of clemency sought; the offense(s) for which clemency was sought; the date and court conviction; the sentence imposed; and the administrative closure of a clemency request and the date of such closure.   First Bollwerk Decl. ¶ 20 (quoting 67 Fed. Reg. 66417, 66418).   In addition, as previously discussed, OPA advises clemency applicants that it may, in its discretion, prepare a "public affairs notice . . . describing . . . a denial of clemency" in cases in which it has determined a "substantial public interest" exists.   Def.'s MSJ, Ex. E (Privacy Act statement).   A clemency applicant "could hardly read this [] as a firm promise of anonymity."   *Lardner I*, 2005 WL 758267, at * 16.

Ms. Bollwerk's declarations serve only to highlight that clemency applicants have no reasonable expectation that the existence of their application and the eventual outcome of their request for clemency will be kept confidential.   Although Ms. Bollwerk explains that some applicants, and in particular pardon applicants, voice "discomfort with the possibility that their convictions may come to public notice as a result of their seeking clemency," nonetheless she confirms that "most pardon applicants who express privacy concerns decide to continue with the pardon process."   First Bollwerk Decl. ¶ 24.   The applicants are thus advised that their application for clemency and the President's decision whether to grant or deny clemency may be

publicly disclosed, yet the applicants voluntarily choose to proceed with the application process. As Judge Bates aptly observed in *Lardner I*:  "The applicant is petitioning the government for the performance of a public act; this is not a situation where he is a third-party who finds himself in government records through no action of his own."  *Id.*

In an effort to distinguish this case from the situation in *Lardner I*, OPA argues that the recent nature of the clemency denials and the sheer number of applicants covered by Plaintiff's request in this case create a greater privacy interest than was held to exist by Judge Bates in *Lardner I*.  *See* Def.'s Opp'n at 7.  The Court is not so persuaded.  With respect to the first point, OPA claims that the records at issue in *Lardner I*—unlike the records at issue here—"were so dated that the privacy interests in what happened decades earlier were not regarded as particularly significant."  Def.'s Opp'n at 7.  Reference to *Lardner I*, however, demonstrates that Judge Bates' discussion of an unsuccessful applicant's privacy interests did not mention, let alone depend upon, the relative age of the files in which the applicant's name was located.  *See* 2005 WL 758267, at * 17.  OPA's supposition that the age of the records "possibly" affected Judge Bates' decision, *see* Def.'s Opp'n at 7, is thus wholly unsupported by the actual text of that decision.  *See id.*  Moreover, OPA makes no effort to explain how the fact that an applicant was denied clemency within the past 10 years substantially alters the privacy interests at stake, particularly given the Court's rejection above that applicants are "stigmatized" by public disclosure of the mere fact that they applied for and were denied clemency.  With respect to the second point, although OPA is correct that the instant FOIA request encompasses a substantially greater number of applicants than those at issue in *Lardner I*, OPA does not explain how this fact

18

affects an *individual* applicant's privacy interest.[7]   Contrary to OPA's apparent contention, an individual applicant's privacy interest is not somehow magnified simply because other individual applicant's privacy interest may be implicated as well.

Finally, the Court notes that, in discussing Exemption 6, OPA has relied heavily on two decisions in particular:  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989), and *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1008 (D.C. Cir 2004).  OPA's reliance on these cases, however, is misplaced.  In *Reporters Committee*, the Supreme Court held that rap sheets—which contain certain descriptive information about an individual, such as date of birth and physical characteristics, as well as the individual's history of arrests, charges, convictions, and incarcerations—are exempt from disclosure under Exemption 7(C).  489 U.S. at 751, 780.  In so deciding, the Supreme Court rejected the argument that an individual has no privacy interest in his criminal history simply because it contains information that was public, holding that "the fact that 'an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information."  *Id.* at 770.  Significantly, however, *Reporters Committee* differs from this case in three important ways.

First, the documents at issue in that case—criminal rap sheets—contain significant,

---

[7] The Court notes that this case is therefore unlike the situation in *Reporters Committee*, where the Supreme Court held that the compilation of otherwise hard-to-obtain information about a particular individual does, in fact, alter the privacy interest implicated by disclosure of that information.  489 U.S. at 764.  The Supreme Court therefore found a "distinction, in terms of personal privacy, between scattered disclosure of the bits of information contained in a rap sheet and the revelation of the rap sheet as a whole."  *Id.*  Here, by contrast, the information sought by Plaintiff—*i.e.*, lists of the identities of unsuccessful clemency applicants—consolidates a single fact about multiple individuals into one list.  It therefore does not gather scattered information about one individual into one location, as was the case in *Reporters Committee*, but rather compiles one discrete fact about many individuals into one location.

detailed personal information.  *Id.* at 751.  By contrast, Plaintiff seeks only disclosure of the

applicant's name and the fact that he applied for and was denied clemency, a far cry from the

type of extensive and personal information contained in the rap sheets at issue in *Reporters*

*Committee*.  Second, public disclosure of the rap sheets was carefully regulated and controlled by

a "web of federal statutory and regulatory provisions" that prevented general disclosure to the

public.  *See id.* at 764-65.  As the Supreme Court emphasized, "[t]his careful and limited pattern

of authorized rap sheet disclosures fits the dictionary definition of privacy as involving a

restriction of information 'to the use of a particular person or group or class of persons.'"  *Id.* at

765.  By contrast, the information sought in this case is available to any member of the general

public upon specific request and may be released by the OPA if it determines there is "substantial

public interest" in the case, facts of which the applicants are made aware prior to filing their

applications for clemency.  Third and finally, the rap sheets in *Reporters Committee* had been

accumulated by the Government in a central database for its own record-keeping purposes.  *Id.* at

770-71.  By contrast, the information sought in this case is in OPA's custody solely as a result of

the applicant's own voluntary decision to petition the Government for clemency, which is itself a

public act.  Thus, although *Reporters Committee* teaches that the public nature of an applicant's

underlying conviction and subsequent clemency request does not *per se* negate any private

interest the individual applicant may have in public disclosure of that information, the Court is

nonetheless persuaded that the privacy interest implicated by the request at issue here is

significantly different—and significantly weaker—than was the privacy interest at issue in

*Reporters Committee*.

 OPA also cites extensively from the D.C. Circuit's decision in *Judicial Watch*, going so

far as to dedicate more than two pages of its 13 page motion for summary judgment to
duplicating a single block quote from that opinion.  *See* Def.'s MSJ at 5-7.  OPA's reliance on
*Judicial Watch*, however, is misplaced, and the lengthy block quote—cited without any legal
analysis or discussion—does nothing to support OPA's position that disclosure in this case is
unwarranted.  In *Judicial Watch*, the plaintiff sought, *inter alia*, "'[a]ny and/or all pardon
applications' considered by former President Clinton."  365 F.3d at 1110.  Thus, unlike here, the
plaintiff in *Judicial Watch* sought the actual substance of the clemency applications, which
contain "non-public, personal information regarding the pardon applicants, their families, and the
crimes they committed."  *Id.* at 1125-26.   The D.C. Circuit held that disclosure of the clemency
applications themselves was exempt under Exemption 6, and in so doing, emphasized the "broad
range of detailed and highly personal information about a pardon applicant" that was contained in
the requested applications, including:

> identifying information such as name, home address, social security number,
> citizenship, and physical characteristics, . . . a detailed account of his or her criminal
> history, substance abuse, occupational licensing history, and such personal
> biographical matters as family history, marital status, and the names, birth dates,
> custody, and location of the applicant's children . . . residences, employment history,
> military record, financial status, and medical history . . . a description of their lives
> since conviction, their mental and physical well-being, and emotional pleas for
> pardons, including letters from friends, family members, employers, and attorneys.

*Id.* at 1125.  By contrast, Plaintiff in this case does not seek disclosure of the substance of the
applicants' clemency applications, but only the fact that the applicants filed a petition for
clemency, which was subsequently denied.  As Judges Bates observed in *Lardner I*, "[a]t no
point [] did the court [in *Judicial Watch*] even suggest that disclosure of the *fact* that an
individual filed a petition for a pardon, instead of the *contents* of the petition itself, amounts to an
unwarranted invasion of the privacy of the applicant."  2005 WL 758267, at * 16 (emphasis

included in original).  OPA's reliance on these cases is therefore misplaced.

The Court concludes that an applicant's privacy interest in the mere fact that he applied for and was denied clemency, although not zero, is nevertheless of a limited and minimal nature.

> ii.     Disclosure of the requested information serves the public's interest in knowing what their Government is up to.

Turning then to the public interest in disclosure, the Court finds that disclosure of the names of unsuccessful clemency applicants directly serves the main "purpose of the [FOIA] – the preservation of 'the citizens' right to be informed about what their government is up to.'" *Beck*, 997 F.2d at 1492-93 (quoting *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted)).  Fundamentally, disclosure of the requested information shines a light on the most basic information about the executive's exercise of his pardon power—who is and who is not granted clemency by the President.  "This is the paradigmatic case for disclosure, in that the information would serve directly to open the Government's activities 'to the sharp eye of public scrutiny.'" *Lardner I*, 2005 Wl 758267, at *17 (quoting *Reports Comm.*, 489 U.S. at 773).  Indeed, it is readily apparent that the public has an interest in laying open the executive's exercise of his clemency power to public scrutiny.

In line with that public interest, the President's decision to *grant* clemency is publicly disclosed as a matter of general practice.  First Bollwerk Decl. ¶ 17.   As discussed above, when the President grants a clemency request, the Government publishes the date of the President's favorable action, the name of the clemency recipient, the city and state of his residence, the offense for which clemency was granted, the date and district of conviction, the sentence imposed, and the name as well as city and state of residence of the applicant's attorney, if the applicant was represented.  *Id.*  This information is not only publicly disclosed, but made readily

22

available to the general public for review on DOJ's website.  *See* http://www.usdoj.gov/pardon/

recipients.htm (last visited July 20, 2009).  This practice of publicly disclosing the President's

decisions to grant clemency confirms the public's interest in opening up the clemency process

and in ensuring that the exercise of the executive's clemency power is not veiled in a cloak of

secrecy.

Surely, then, just as disclosure of the names of successful clemency applicants furthers

the public's interest in understanding the functioning of the clemency process, so too does

disclosure of the identities of unsuccessful clemency applicants "let citizens know 'what their

government is up to.'"  *Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 497

(1994) (quoting *Reporters Comm.*, 489 U.S. at 773)).  Moreover, disclosure of the identities of

unsuccessful applicants is not only useful for revealing to whom the President has denied

clemency, but it also increases the value of the information already in the public domain—*i.e.*,

the names of those to whom the President has granted clemency.  As Judge Bates observed in

*Lardner I*, "[a] comparison of the successful and unsuccessful applicants would

illuminate—indeed, a claim could be made that it is essential to an understanding of—the

circumstances in which the executive chooses to grant or deny a pardon and the factors that bear

on that decision."  2005 WL 758267, at *17.

Significantly, OPA already acknowledges that the public has an interest in knowing this

information, given its current policy of releasing such information to a member of the public

upon specific request.  OPA, however, in seeking to minimize the importance of its current

disclosure policy, makes much of the fact that applicants "have [n]ever had any reason to believe

that their names would be publicly disclosed as part of a listing of all those denied executive

23

clemency by a given President."  First Bollwerk Decl. ¶ 25.  OPA thus focuses on the manner of public disclosure—*i.e.*, disclosure via a list versus disclosure on an individual basis.  Although OPA does not specifically explain why it believes that the manner of public disclosure affects an applicant's privacy interest, the obvious import of OPA's argument is that disclosure via a list increases the risk of broader public disclosure.  For example, OPA opines that a member of the public who requests information about a specific, named clemency applicant is likely to use the information for more limited, personal purposes.  *See id.* ¶ 19 (observing that "the vast majority of third-party requests for such information are made by family members or close friends of the clemency applicant, who . . . wish either to support for favorable action by the President or to inquire about the status of the petition).  By contrast, OPA implies that a member of the public who requests information about all unsuccessful clemency applications during a certain time period is likely to use the information for a broader, more public purpose.  *See id.* (suggesting that permitting disclosure would permit "a media request for information" that is "simply a fishing expedition").  The Supreme Court, however, has made it abundantly clear that "whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made."  *Reporters Comm.*, 489 U.S. at 771 (emphasis in original removed).  "Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest [in a particular document].'"  *Id.* (quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)).  OPA's focus on the identity of the third-party requester and the manner of disclosure is therefore misplaced.

OPA further argues that "there is little, if anything, to be gained from the release of [the requested] information, as the names alone offer no insight into the actions of the agency, where

24

the results of the investigations into post-conviction activities are incorporated into letters of advice that are protected from disclosure." Def.'s Opp'n at 12. Admittedly, disclosure of the identities of unsuccessful clemency applicants would not reveal the actual substance of OPA's recommendations regarding their applications to the President. The Court, however, does not agree that disclosure of the requested material can never provide insight into the process by which OPA investigates and issues its recommendation to the President. By OPA's own admission, "the President has traditionally relied heavily on the Department's advice in clemency cases to inform his decision-making." First Bollwerk Decl. ¶ 6. Arguably, then, disclosure of the President's decision may reveal insight into the OPA's recommendation process as well. Indeed, OPA has conceded that the actual substance of its recommendation is not necessary to gain insight into the clemency process, openly acknowledging that "[c]onsideration of such factors as the nature of an applicant's offense, the sentence imposed upon him, the date of his sentencing, and the date of the President's decision denying clemency [] could provide a FOIA requester with a substantive basis upon which to draw some conclusions about the functioning of the clemency process during a given presidential administration." Def.'s Stmt. ¶ 28. If such information is helpful to understanding how the clemency process functions, logic counsels that the names of the unsuccessful clemency applications is of equal assistance.

Regardless, even if the Court were to accept OPA's contention that the requested information provides no insight into OPA's role in the clemency process, the public interest in this case cannot be defined so narrowly. As found above, disclosure of the identities of the individuals to whom the President has denied clemency serves the public's interest in laying open the executive's exercise of the pardon process for public scrutiny—and the mere fact that

disclosure may not *also* shed light on the substance of the OPA's recommendation and its investigative process does not negate the public interest in disclosure.  As the Supreme Court has stated, the purpose behind FOIA is fostered where "disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' *or* otherwise let citizens know 'what their government is up to.'"  *Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (emphasis added) (quoting *Reporters Comm.*, 489 U.S. at 773)).

Finally, the Court emphasizes that Plaintiff in this case seeks "official information" documenting the Government's actions—*i.e.*, the denial by the President of a petition for clemency.  As explained above, when the President denies clemency, the Office of the Counsel to the President informs OPA in writing that the requests of the designated applicants have been denied.  *See* First Bollwerk Decl. ¶ 15.  That notification serves as the official record of the President's action on the clemency requests of those applicants and becomes part of the clemency file of the applicant and is recorded in OPA's automated database.  Second Bollwerk Decl. ¶ 6. The requested information, then, is not simply information "that the Government happens to be storing." *Reporters Comm.*, 489 U.S. at 780.  Rather, the information requested is drawn from reports of and reflects the official actions of a Government official—that is, the executive and his exercise of the clemency power.  This information serves as "a record of 'what the Government is up to,'" *id.* at 780, and thus falls squarely within FOIA's statutory purpose.  It is not the case that the information at issue was simply accumulated by the OPA but reveals little or nothing about the Government's actions.  *Id.* at 773.  Accordingly, OPA's reliance on *Reporters Committee* is misplaced.  *See* Def.'s Opp'n at 13.

Given the substantial public interest and the minimal privacy interest that exists here, the

Court concludes that the requested information may not be properly withheld under Exemption 6.

As explained above, an agency may withhold information pursuant to this Exemption only if it is

evident that disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(6). Exemption 6 thus "tilt[s] the balance (of disclosure interests against privacy

interests) in favor of disclosure," and creates a "heavy burden" for an agency invoking

Exemption 6. *Morley*, 508 F.3d at 1128. Having determined that disclosure of the identities of

unsuccessful clemency applicants furthers the public interest behind FOIA and that the

applicant's privacy interest in this case is minimal, the Court concludes that OPA has not met its

heavy burden and it may not withhold the names of unsuccessful clemency applicants pursuant to

Exemption 6. Accordingly, the Court shall GRANT Plaintiff's Motion for Summary Judgment

and DENY Defendant's Cross-Motion for Summary Judgment, with respect to the propriety of

withholding the requested information pursuant to Exemption 6.

          2.    <u>Exemption 7</u>

      Exemption 7(C) protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records "could reasonably

be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7).

To properly assert Exemption 7(C), OPA must first establish that the records at issue were

compiled for law enforcement purposes. If this showing is made, OPA must then demonstrate

that disclosure of the records could reasonably be expected to constitute an unwarranted invasion

of privacy. *See Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003). For the

reasons set forth below, the Court finds that the records at issue are not, in fact, law enforcement

records, and OPA therefore may not withhold the records pursuant to Exemption 7(C).

At the outset the Court notes that where an agency "specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998) (citing *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982)). Nevertheless, the "deferential" standard of review that the Court applies to this determination is not "vacuous." *Id.* Instead, the agency's declarations "must establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and possible security risk or violation of federal law.'" *Id.* (quoting *Pratt*, 673 F.2d at 420-21). As the D.C. Circuit explained in *Campbell*, "[t]he fact that information is stored in a [document] with an official-sounding label is insufficient standing alone to uphold nondisclosure;" "[a]t a minimum, the [agency] must demonstrate the relationship between a record and its label and between the label and a law enforcement purpose." *Id.* If the agency's declarations "'fail to supply facts' in sufficient detail to apply the *Pratt* rational nexus test, then a court may not grant summary judgment for the agency." *Id.* (citing *Quinon v. Federal Bureau of Investigation*, 86 F.3d 1222, 1229 (D.C. Cir. 1996)).

As an initial matter, it is unclear whether OPA intended to argue that it is a criminal law enforcement agency specializing in law enforcement, such that its decision to invoke Exemption 7 is entitled to deference. *See Campbell*, 164 F.3d at 32. The only reference to this issue by OPA is contained in a lone footnote in its motion for summary judgment, in which OPA states the undisputed proposition that "criminal law enforcement agencies need only show that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of the agency." Def.'s MSJ at 8, n. 3. OPA, however, provides no further elaboration on this point and does not actually argue, in either its own motion or its

28

opposition to Plaintiff's motion, that OPA is, in fact, a law enforcement agency.  *See* Def.'s MSJ at 8-9; Def.'s Opp'n 9-12.  The Court therefore does not understand OPA to be making the specific argument that it is a law enforcement agency whose decision on the law enforcement nature of the records at issue is entitled to deference.[8]

Regarldess, even if the Court were to find that OPA is a law enforcement agency and its decision to invoke Exemption 7(C) is entitled to deference, the Court would nonetheless find that OPA has not shown that the records at issue are law enforcement records.  First, OPA broadly asserts that "clemency records" are law enforcement records under FOIA.  *See* Def.'s MSJ at 8-9; Def.'s Opp'n at 9-12.  The D.C. Circuit has made clear, however, that an agency's broad claim that its files are law enforcement files—without addressing the particular documents at issue—is insufficient to establish that the specific documents in dispute within those files are law enforcement records under FOIA.  *See Campbell*, 164 F.3d at 32 (claim by agency that "anything in [a law enforcement agency's] file pertains to an exempt law enforcement purpose" has been "long rejected").  Second, OPA's assertion that "clemency records are [] considered law

---

[8] Although it is well established that DOJ is an agency specializing in law enforcement for purposes of Exemption 7, *see Ctr. for Nat'l Security Studies*, 331 F.3d at 926, courts routinely look to the specific agency or unit within DOJ that has custody over the responsive materials in determining whether deference is due to the decision that the records at issue are "law enforcement records" for purposes of FOIA.  *See, e.g., Campbell*, 164 F.3d at 32 (focusing on whether the FBI, rather than the DOJ in general, specializes in law enforcement such that its decision to invoke Exemption 7 is entitled to deference); *Barnard v. Dep't of Homeland Security*, 598 F. Supp. 2d 1, 14 (D.D.C. 2009) (focusing on whether the United States Customs and Border Protection and Immigration and Customs Enforcement, rather than the Department of Homeland Security in general, perform law enforcement activities for purposes of Exemption 7).  Accordingly, without further elaboration from OPA as to the bases for such a conclusion that it is a law enforcement agency, the fact that DOJ—and not OPA—is clearly a law enforcement agency is insufficient to establish that the Court owes deference to OPA's conclusion that the requested documents are law enforcement records.

enforcement records under the FOIA"—even if true—misses the point entirely.  Def.'s Opp'n at

9.  In both its own motion and its opposition to Plaintiff's motion, as well as in Ms. Bollwerk's

supporting declarations, OPA describes at great length both the nature of OPA's investigation

into the merits of clemency applications and the possible contents of an applicant's clemency

application—ostensibly to demonstrate that the information compiled in OPA's clemency

records as part of its investigation into the applicant is information compiled for law enforcement

purposes.  *See* Def.'s MSJ at 8-9; Def.'s Opp'n at 9-12; First Bollwerk Decl. ¶ 26; Second

Bollwerk Decl. ¶¶ 1-5.  Significantly, however, that is ***not*** the question now before the Court.

Rather, Plaintiff seeks only disclosure of responsive material listing the names of those

clemency applicants whose requests for clemency were denied by President Bush.  This

information "exists independently of the clemency file on any applicant," Pl.'s MSJ at 9, a fact

that OPA does not dispute in its opposition, and has therefore conceded, *see* Def.'s Opp'n at 9-

12.  *See Franklin v. Potter*, 600 F.Supp.2d 38, 60 (D.D.C. 2009) (treating defendant's argument

in motion for summary judgment as conceded where plaintiff failed to address in his response);

*Hopkins v. Women's Div., General Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C.

2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a

dispositive motion and addresses only certain arguments raised by the defendant, a court may

treat those arguments that the plaintiff failed to address as conceded."), *aff'd* 98 Fed. Appx. 8

(D.C. Cir. 2004).  As is apparent then, Plaintiff does not seek copies of the applicants' actual

clemency petitions or any substantive information compiled by the OPA and included in the files

of the unsuccessful applicants.  Accordingly, the fact that such substantive information may

qualify as law enforcement records for purposes of FOIA is irrelevant to the issue at hand.[9]

OPA argues that its lists of the unsuccessful applicants' names are nonetheless law enforcement records because: (1) "the computer database records containing the applicants' names are part of the same system of records as the paper [clemency] files;" and (2) such records "are created using the very clemency requests that start the investigation into whether a pardon or commutation is warranted for the crime and applicant involved." Def.'s Reply at 3. These arguments are wholly without merit. The first assertion is legally irrelevant; as discussed above, even assuming that clemency records in general are law enforcement records, the fact that the lists of denied applicants "are part of the same system of records" does *not* mean that the lists themselves are law enforcement records for purposes of FOIA. *See Campbell*, 164 F.3d at 32.

The second assertion is unsupported by the record. As OPA acknowledges, when the President denies clemency—whether of one individual or several individuals—the Office of the Counsel to the President informs OPA in writing that the requests have been denied. *See* First Bollwerk Decl. ¶ 15; Second Bollwerk Decl. ¶ 5; Lardner Decl., Ex. 7 (redacted copy of notification list produced to Plaintiff in connection with a separate FOIA request). "This notification from the White House Counsel's Office serves as the official record of the President's action on the clemency requests of those applicants." Second Bollwerk Decl. ¶ 5. To the extent OPA retains those notifications, or creates computer records based on the information

---

[9] For this reason, *Binion v. DOJ*, 695 F.2d 1189 (9th Cir. 1983) and *Associated Press v. DOJ*, 549 F.3d 62 (2d Cir. 2008) are inapposite. Def.'s Opp'n at 9. In *Binion*, the Ninth Circuit held that "information compiled by the FBI in a pardon applicant investigation satisfies the rational nexus test" under Exemption 7. 695 F.2d at 1194. Similarly, in *Associated Press*, the Second Circuit addressed a FOIA request for a copy of the commutation petition filed by John Walker Lindh. 549 F.3d at 65. Those decisions thus involved requests for substantive records included in an applicant's clemency file, an issue not implicated in the case at hand.

provided in the notifications, such documents are not "created using the [] clemency requests," but rather using the notifications sent by the White House to the OPA, which are the official record of the President's decision to deny clemency to those applicants.[10]  Thus, contrary to OPA's characterization, it is evident that the records were not compiled by OPA in the course of "conducting investigations into the clemency requests of all applicants over the past eight years." Def.'s MSJ at 9.[11]

      Finally, the Court emphasizes once again that OPA, as a matter of general policy, publicly

---

[10] Although OPA has admitted that it maintains lists of clemency applications that have been denied, it is undisputed that OPA possesses responsive documents, *see* Pl.'s Stmt. ¶ 17; Def.'s Resp. ¶ 17; Lardner Decl., Ex. F, OPA nonetheless asserts that Plaintiff's FOIA request would require it to "extract information" from the substantive clemency applicants, *see* First Bollwerk Decl. ¶ 26.  Given OPA's admission that it already maintains responsive records, any argument that Plaintiff's request requires OPA to create new documents from the substantive clemency records is unsupported by the record.  In addition, the Court emphasizes that FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created or retained."  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).  Thus, to the extent OPA suggests that Plaintiff's FOIA request somehow obligates it to "extract the information sought by Plaintiff" from clemency assessments or other records, Plaintiff is both factually and legally incorrect.

[11] The Court notes that Plaintiff cites extensively to *Abramson v. FBI*, 658 F.3d 806, 813 (D.C. Cir. 1980) for the proposition that—even if the information sought in this case was taken from the applicant's individual clemency files—OPA must still demonstrate that the "new document [] qualif[ies] independently for any exemptions from disclosure under FOIA."  Pl.'s MSJ at 6; Pl.'s Reply at 7-8.  Plaintiff, however, is flatly wrong as a legal matter, ignoring the fact that the D.C. Circuit's decision in *Abramson* was subsequently ***reversed*** by the United States Supreme Court.  *See FBI v. Abramson*, 456 U.S. 615, 631 (1982).  In so doing, the Supreme Court made clear that "information initially contained in a record made by law enforcement purposes continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document prepared for a non-law-enforcement purpose."  *See FBI v. Abramson*, 456 U.S. 615, 631 (1982).  Plaintiff's continued reliance on the D.C. Circuit's decision in *Abramson*, without acknowledging its subsequent reversal, is inappropriate, to say the least.  Nonetheless, given the Court's finding above that OPA's lists of unsuccessful clemency applicants are not "created using the [] clemency requests," but rather using the notifications sent by the White House to the OPA, Plaintiff's error is irrelevant to the Court's holding in this case.

discloses the requested information to any member of the public upon specific request and also reserves the right to disclose the information to the public at large upon its own determination that there is "substantial public interest" in the case. The fact that OPA freely releases the names of unsuccessful clemency applicants to the general public in certain circumstances casts significant doubt on OPA's claim that its records reflecting this information should be treated as confidential law enforcement records that must be protected in order to "prevent premature disclosure of investigatory materials." *See Abramson*, 456 U.S. at 621.

As OPA has not provided any meritorious reason why the *actual* records at issue in this litigation—*i.e.*, lists or databases that are compiled or retained by OPA to record the President's official decision to deny clemency requests as transmitted to OPA by the Office of the Counsel to the President—should be considered law enforcement records for purposes of FOIA, the Court concludes that the materials are not law enforcement records as required under Exemption 7. Accordingly, OPA may not properly withhold the documents under Exemption 7(C) and the Court therefore shall GRANT Plaintiff's Motion for Summary Judgment and DENY Defendant's Cross-Motion for Summary Judgment, with respect to the propriety of withholding the requested information pursuant to Exemption 7.

In conclusion, then, the Court finds that OPA may not properly withhold the names of those applicants whose applications for clemency were denied by President Bush during his term in office pursuant to either Exemption 6 or Exemption 7(C). As these are the only exemptions claimed in the instant action, OPA is hereby required to disclose the requested information to Plaintiff.

C.      *Segregability*

Finally, as explained above, under D.C. Circuit precedent, district courts are required to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement*, 177 F.3d at 1028.  Although Plaintiff initially argued that OPA had not released all segregable portions of the withheld records, *see* Pl.'s MSJ at 18, Plaintiff's concerns were subsequently resolved by the parties' Stipulation filed with this Court on November 20, 2008.  *See* Stipulation, Docket No. [11].  Moreover, as the only question at issue in this case is whether OPA may properly withhold the responsive materials listing the identities of the applicants whose clemency applications were denied by President Bush during his term in office under Exemptions 6 and 7(C), and as the Court has now answered that question in the negative, all requested non-exempt information must be disclosed to the Plaintiff. Accordingly, the Court shall DENY Plaintiff's Motion for Summary Judgment and GRANT Defendant's Cross-Motion for Summary Judgment, with respect to issues of segregability, as Plaintiff's concerns are now moot in light of the parties' November 20, 2008 Stipulation and the Court finds that no other segregability concerns are at issue in this case given its conclusion above that the requested information must be disclosed in full.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT IN PART and DENY IN PART Plaintiff's [9] Motion for Summary Judgment and shall GRANT IN PART and DENY IN PART Defendant's [10] Cross-Motion for Summary Judgment.  Specifically, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion with respect to the issues of collateral estoppel and segregabilty, but Court GRANTS Plaintiff's motion and DENIES Defendant's

motion with respect to the propriety of withholding the requested information under Exemptions

6 and 7(C).  OPA is therefore required to disclose to Plaintiff the names of those pardon and

commutation applicants whose applications were denied by President Bush during his term in

office.  An appropriate order accompanies this memorandum opinion.

Date: July 31, 2009

                                                     _/s/_____
                                                     COLLEEN KOLLAR-KOTELLY
                                                     United States District Judge